IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

MICHAEL P. HINSON                                                    PLAINTIFF

         v.                          Civil No. 08-5072

DR. HUSKINS; and
NURSE MARSHA SMITH                                                   DEFENDANTS

### MEMORANDUM OPINION

This is a civil rights case filed under 42 U.S.C. § 1983. The plaintiff proceeds *pro se* and *in forma pauperis.* The case is before the court for decision pursuant to the consent of the parties (Doc. 63).

While he was incarcerated at the Benton County Detention Center, plaintiff maintains he was denied adequate dental care. A bench trial was held on February 18, 2010. At the conclusion of the trial, the case was taken under advisement pending preparation of this memorandum opinion.

### I. EVIDENCE PRESENTED

The Court heard the testimony of the following individuals: (1) Michael Hinson, the plaintiff; (2) Timothy Worley; (3) Jamie Perdue; (4) Jack Bolden; (5) Malcolm Hendrix; (6) Tim McCauley; (7) Steven Samples; (8) Dr. John Huskins, a named defendant; (9) Nurse Marsha Smith, a named defendant; (10) Captain Hunter Petray; and (11) Captain Robert Holly. The testimony of these witnesses will be summarized in the first person.

-1-

**Michael Hinson**

I'm incarcerated at the Arkansas Department of Corrections (ADC).  In 2008 I was incarcerated at the Benton County Detention Center (BCDC).  On January 14, 2008, I was booked into the BCDC.

In February, I had a filling fall out and a tooth break off at the gum-line.  It just broke off when I was chewing.  The tooth the filling fell out of was not hurting.  The tooth that broke off was hurting.  It broke off right where the nerve is.  I don't have the broken tooth or the filling.  I don't know what happened to them; I may have swallowed them.

It became abscessed.  I have no medical or dental training but I'm qualified enough to know when I need a doctor or dentist.  The pain I was in was evidence that I needed to go to a dentist.

On February 12th, I submitted a medical request.  *See Plaintiff's Exhibit* 1 at page 1.  I was in pain and had a sore throat.  I was seen by Dr. Huskins on February 15th.  *Defendants' Exhibit* 1.  He indicated I had "significant dental caries and periodontal disease."  *Plaintiff's Exhibit* 2 at page 1.  He prescribed saline rinses.  *Id.*

I told Dr. Huskins I was in pain and wanted to see a dentist.  He had a lot of people waiting to see him--probably ten or more people.

On February 18th, I submitted a grievance.  *Plaintiff's Exhibit* 1 at page 3.  I asked them to get me to a dentist for proper treatment.

On March 6th, I submitted another grievance complaining about my dental problems--broken teeth and such.  *Plaintiff's Exhibit* 1 at page 4.  I stated that the salt water rinses were not proper treatment.  *Id.*  The saline rinses were not helping.

On March 14th, I submitted another grievance.  *Plaintiff's Exhibit* 1 at page 4.  I requested proper medical attention from a dentist.

I was seen by the doctor on March 17th.  *Defendants' Exhibit* 2.  His notes indicate I was seen for dental pain and a head and chest cold.  *Id.*  However, at that time I did not have a head and chest cold.  In the doctor's notes he indicates I had "some dental caries" and "[n]o significant periodontal disease."  *Id.*  I talked to him about my continuing dental pain.  He said we would try Amoxicillin for a week.  *Id.*

On April 15th, I submitted a grievance about dental problems and toothaches.  *Plaintiff's Exhibit* 1 at page 5.  Captain Petray responded that he would forward the grievance to medical.  *Id.*

On May 4th, I asked for a soft tray since I could not get proper or any type of medical attention regarding my dental problems.  *Plaintiff's Exhibit* 1 at page 6.  In response, I was put on the list to see the doctor.  *Id.*  It was my understanding that the doctor had to make all decisions.

On May 8th, I submitted a medical request because of a cold and flu.  *Plaintiff's Exhibit* 1 at page 7.  I also mentioned I had an abscessed and aching tooth.  *Id.*

On May 22nd, I submitted a medical request because of a toothache.  *Plaintiff's Exhibit* 1 at page 8.  I said I had a toothache and had one on and off for months.  *Id.*

On May 23rd, I submitted a medical request about a toothache.  *Plaintiff's Exhibit* 1 at page 9.  I saw the doctor that day before I submitted the request.  *Id.*  He prescribed salt water rinses.  *Id.*  I said this was not helping to relieve pain.  *Id.*

Sometimes in response to a request I would see the nurse; other times I would see the doctor.  The nurse had been giving me Tylenol.  The pain was excruciating.

On June 23rd, I submitted a medical request because of a toothache.  *Plaintiff's Exhibit* 1 at page 10.  I said it was the same toothache I had been having for five months.  *Id.*  I stated Tylenol was no longer helping.  *Id.*  I was referred to the doctor.  *Id.*

I continued having problems with the tooth that had broken off.  I was in pain.  For four months, my tooth was not properly taken care of and I was in pain most of the time.  The pain sometimes subsided and I was able to eat and sleep.  I was only prescribed saline rinses and Amoxicillin.  The treatment was not effective.  My jaw was swollen.  I believe I saw the doctor a total of three times.

On June 25th, Nurse Smith told me I was scheduled to go to the dentist.  On June 27th, I was taken to the dentist.  The dentist was told to extract only.  I had two teeth extracted.  I believe both teeth were on the upper right hand side.  The dentist prescribed Amoxicillin for thirty days. *Plaintiff's Exhibit* 2 at page 4.[1]  When I got back to the jail, the doctor dropped it to ten days.  *Plaintiff's Exhibit* 3 at page 4.

The whole time I had to get a soft tray because I couldn't chew the food contained on the regular tray.  It hurt when I ate.  I tried to eat on one side but the food would get over there.  My gums and jaw were actually swollen.  The saline rinses and Amoxicillin didn't work.

The witnesses I have all saw me in pain.  Several times in April, May, and June, I went to get the medication and it wasn't available.  The medication logs, Defendants' Exhibit 5, are not accurate; someone else signed or initialed the log indicating I received the medication when I did not.

---

[1]Plaintiff's Exhibit 2 at page 4 is a copy of the prescription written by Andrew G. Briese, D.D.S.  It is for 500 mg. tablets of Amoxicillin with directions to disburse thirty and dispense t.i.d. (three times a day) until gone.

-4-

On August 6, 2008, I was sent to the ADC.  I submitted a dental sick call.  The dentist noted a chronic abscess on one tooth.  *Court's Exhibit* 1.  I had to have another tooth extracted.

**Tim Worley**

I'm a welder.  I knew Hinson from the BCDC in 2008.  I was in D-pod; I believe for approximately thirty days.  I'm not sure what month it was.

Hinson was in the pod with me.  We did not share a cell.  I wouldn't say we were friends.  I've had no contact with him since we were in Benton County together.

I remember his jaw was swollen and he was doing a lot of paperwork.  He gave his food tray away on a regular basis.

**Jamie Perdue**

I know Hinson from the BCDC.  We were in there at the same time.  Hinson was always complaining that he was in pain.  His jaw was swollen for a long time.  He said he had some kind of medicine but that he was always in pain.

I was in D pod for about four months.  I observed the swelling.

**Jack Bolden**

I don't remember very much about Hinson.  I recall he was in the same pod but I don't know anything about him having problems with his teeth.

**Malcolm Hendrix**

I know Hinson.  We were at the BCDC at the same time.  I was in the BCDC from December 19, 2007, until September 6, 2008.  I am now in the ADC.

When we were in cell 153, Hinson had a swollen jaw the whole time.  He was complaining of pain.  He wasn't able to eat.  He received a different tray than the rest of us but he only ate a little off of it.

-5-

He was always asking to see the doctor and to get something for the pain.  For at least two months, I saw Hinson was in pain.  I'm qualified enough to see Hinson was in pain.

I didn't talk to Hinson about coming to court.  This morning I asked why I was coming to court.  I didn't know Hinson before or after we were incarcerated in the BCDC.  I'm incarcerated in a different ADC facility.  I'm in the Tucker Unit.

### Tim McCauley

I'm in the ADC.  I know Hinson because we were in the BCDC at the same time.  I was in there with him for two months--May and June.

Hinson's jaw was swollen and I think he had an abscessed tooth.  The whole time I was in there his jaw was swollen.  I think he had a special soft tray.

I have no medical training.  I'm not qualified to diagnose a condition.  I saw the physical evidence.  I saw that his jaw was swollen.

I'm in a different ADC facility than Hinson.  We didn't discuss the case.  I was surprised to even be here.  I asked why I was up here.  He said it was about his medical claim against the BCDC.

### Steven Samples

I'm in the ADC.  I know Hinson was in the BCDC at the same time.  I was there from March 30th to September 12th.

Hinson came in May.  We were in the BCDC together for about three months.  At first we were just in the same pod but then we were put in the same cell for the last two months.  It was a two man cell.  We were locked out of the cell all day.  When we were in the cell together, he had already been to the dentist.

Hinson's jaw was swollen up for one and a half to two months.  He always walked around in pain.  He said he couldn't get medical attention or anything for the pain.  He was on a soft diet because of his teeth.  He sat at the same table as I did.  He gave his food away.

I saw his jaw swollen.  I knew you got a soft tray diet if you had bad teeth.  I could tell he was in pain.  He was holding his jaw; the side of his face.

Somewhere around June, Hinson went to the dentist.  You don't want to get sick in jail.  Medical treatment is not their priority.

I'm not in the same ADC facility as Hinson.  I didn't get to talk to him.  I didn't know what I was coming for.

***Dr. John Huskins***

I was the medical care provider at the BCDC when Hinson was incarcerated there.  I am a family practice physician.  I am a full-time employee of the BCDC.  I have been there four years.  I draw a regular paycheck.  I have my own practice as well.

At the BCDC, I come in for clinic.  I'm given a list of patients I am seeing.  The nurse gives me the list.  I bring the patient in, weigh him, and ask what problems he is having.

All I do is see patients on the list.  I do not see the inmate's medical requests or grievances.  The requests and grievances are available but I don't look at them.

With respect to grievances, I never see those.  I do make the decisions regarding medical care.  However, I don't decide what should be done in response to a grievance or respond to grievances.  I don't make the decision regarding medical care until I see the inmate.  If there is a medical grievance, the nurse puts the inmate on the list to see me the next time I'm scheduled to be at the jail.

-7-

I don't know why Hinson's grievances regarding his medical care are not in his medical file. My impression was that the grievances were forwarded to medical. When the nurse received the grievance, she would schedule the inmate to see me. The grievances are normally then put in the inmate's medical file. Apparently that didn't happen in this case.

The BCDC does not limit the treatments I give. I can do whatever I believe is appropriate. I usually treat for five to seven days. If the problem has not cleared up, the inmate can return. I rely on jail staff to let me know of any problems with an inmate.

If I believe the inmate should go to the dentist, I make a note in the chart. I write extract. This means the inmate needs to go to the dentist. I'm the usual one who sends inmate's to the dentist. An inmate gets sent to the dentist when we see reason enough for him to go.

I treat the inmates for what they say that day. When I see an inmate, he may have submitted multiple medical requests. So, I just ask what complaints they have that day.

I have nothing to do with the paperwork. The only paperwork I create is my notes.

I have no training as a dentist but I'm qualified to make the determination of whether or not an inmate needs to see the dentist. If a dental condition is not treated, it may become systemic.

I don't remember Hinson but I have my records. I saw Hinson seven times; February 15th (dental pain), March 17th (head and chest cold and dental pain), May 7th (head and chest cold and dental pain) , May 9th (sore throat, headache, and dental pain), May 23rd (dental pain), June 18th (head and chest cold), and June 27th (dental pain but he was scheduled to see the dentist that day so nothing done). *Defendants' Exhibit* 4. Every time I saw Hinson, I evaluated him and treated him. His cavity didn't change the whole time he was there. The treatment he received was adequate.

-8-

When I saw Hinson on February 15, 2008, *Defendants' Exhibit* 1, I noted he had significant dental caries and periodontal disease. *Id.* I never noted that Hinson had a broken tooth. I don't remember being told anything about a missing filling. Periodontal disease is an inflammation or infection of the gum. It can be acute when the gum has pulled away from the tooth causing the tooth to be exposed. Cavities are caused by a bacterial process eating away at the enamel.

The last page of Defendants' Exhibit 6 is a dental x-ray done on June 27th. It appears to show a broken tooth. The white area on the x-ray is a filling in a tooth.

I prescribed saline rinses for seven days. *Defendants' Exhibit* 1. This should have reduced the swelling and killed the bacteria. It wouldn't fix his cavities but slows the process. Fluoride can help strengthen enamel. I gave him nothing for pain. Seven days is all we would treat for. If Hinson was still having a problem, he could come back in anytime.

I saw Hinson again on March 17th. *Defendants' Exhibit* 2. I did a general physical examination. *Id.* Under chief complaint, I put what the patient tells me. *Id.* In this case, it says Hinson came in for dental pain and a head and chest cold. *Id.*

I would examine him to identify cavities or problems with the gum. I do not have a dental probe or mirror. I do have a light. I look at the face and neck. I noted that Hinson did have some dental caries but no significant periodontal disease. *Id.* It was my impression that the periodontal disease had improved.

I prescribed Amoxicillin for a week. *Id.* Amoxicillin is an antibiotic; a fairly cheap one. There is nothing in my notes indicating he had a head or chest cold. *Id.* I didn't note any colored drainage. But I wouldn't have given him antibiotics when he wasn't complaining of respiratory problems. The antibiotics were for a upper respiratory infection (URI). If a cold is

-9-

AO72A
(Rev. 8/82)

caused by a virus, Amoxicillin would not work.  If it was a bacterial cold, Amoxicillin would work.

The March 17th visit is recorded on a separate sheet with his inmate name and file number not noted.  *Defendants' Exhibit* 4 at page 2.  The captain probably received Hinson's grievance dated March 14, *Plaintiff's Exhibit* 1 at page 4.  The captain probably asked me to see him that day so I just got a blank sheet.  I made these notations on March 17th when I examined him.  *Defendants' Exhibit* 4 at page 2.

When Hinson first came to me, he had periodontal disease.  *Defendants' Exhibit* 1.  The next time I saw him, on March 17th, he had no active periodontal disease.  *Defendants' Exhibit* 2.  The saline cleared up his periodontal disease.

If an inmate has cavities or missing teeth, I look for swelling around the jaw.  If the inmate has cavities or periodontal disease, I treat for five to seven days.  Then we follow-up to see is there has been any progression.  In this case, there is nothing in my records about Hinson having an infection, an abscess, or swelling.  These would have been positive findings so I would have made a note of it.  If he had a swollen jaw, I would have made a note of it.

I sent Hinson to the dentist because he was having increasing symptoms.  I never saw a reason for him to go to the dentist other than cavities.  There was no medical reason for him to go to the dentist sooner.

On May 23rd, *Defendants' Exhibit* 4 at page 3, I instructed Smith to set him up with the dentist.  *Id.*  I wrote dental and then extract.  *Id.*  When I put extract that means we are going to send the inmate to the dentist.  The nurse knows what I mean.  We do not tell the dentist what to do.  Greater than ninety-five percent of the time, I would say extractions are done.

-10-

Defendants' Exhibit 3 is a request to the ADC asking for approval for extractions.  It was not filled out until June 25th and faxed on the 26th.  *Id.*  I do not do any of the requests for treatment authority; the nurse does.  However, if Hinson was sentenced he was the Department of Corrections' (DOC) property and we have to get authority to send him to the dentist.  The authorization request was granted.  *Id.*  The DOC authorized fillings or extractions.  *Id.*

Amoxicillin should start working the first day.  The number of days it is given for depends on what you are treating.  For swelling, I would give it for a week.

Most issues regarding medication go through me.  If I was gone, the nurse would prescribe saline rinses and antibiotics but then she would clear it with me when I got back.

I was treating Hinson's symptoms.  If I was at home and had the same problem, I would probably do saline rinses and an antibiotic.  If that didn't work, I would go to the dentist.  If I didn't know what was causing the pain, I would go to the dentist.  I probably would not wait four and a half months to go to the dentist.

If an inmate comes in with a toothache, I would prescribe warm salt water rinses.  If the toothache persists, I would give Tylenol.  If I can't tell what the problem was, I would send the inmate to the dentist.  If a couldn't control the toothache with medication, I would send the inmate to the dentist.  I would let it go a few days or a week or so.  If the problem is a cavity, like Hinson had, I would treat it for months.

I treat and then wait to see the result.  If the problem is not better, I treat again.  I didn't see any abscess in Hinson's case.  There is no limit on how we treat a local infection.

On Defendants' Exhibit 4, I wrote dental on June 27th.  The dentist wrote what teeth he extracted and that he prescribed Amoxicillin.

-11-

The dentist wrote a prescription for the Amoxicillin.  *Defendants' Exhibit* 5 at page 19. It indicates thirty pills should be dispensed and it should be taken three times a day until gone. *Id.*  This is a common prescription.  This is the way you write it.  It was given to Hinson the way the dentist wrote it.

The nurse would have made a notation on the chart about the medication and then ordered it.  I would merely initial it.  *Defendants' Exhibit* 4 at page 4.  The record of the prescription written on the chart is the same as the prescription written by the dentist.  *Id; Defendants' Exhibit* 5 at page 19.

The record of Hinson's dental examination at the ADC indicates he has a chronic abscess. *Court's Exhibit* 1.  This means he had no symptoms--no pain.  You don't see it or feel it but it is there.  A notation was made that the two teeth were not restorable.  *Id.*  He had substantial dental problems.  He had two extractions at the BCDC in June and one more extraction after he was at the ADC.

Dental conditions can be very painful.  I would not let anyone sit around and suffer. After I prescribed Amoxicillin in March, I did not see Hinson for almost two months.

Hinson did submit a grievance on April 15th saying he was still having dental problems and toothaches.  *Plaintiff's Exhibit* 1 at page 5.  I don't answer any grievances or make any medical decisions based on what is written on the grievance.  I'm only aware of what is going on when I'm told by the nurse or jail staff or when an inmate is put on the list to see me.  I believe if the nurse sees the grievances, she writes on them.

### Nurse Marsha Smith

I am the BCDC nurse.  I was at the BCDC in 2008.  I've been working there for three years.

-12-

I'm familiar with the procedures for medical request forms. The same form is used to submit grievances, requests, and medical request. *See Plaintiff's Exhibit* 1. The inmate is supposed to circle on the form what type of complaint or request he is making. The inmate then completes the form and gives the form to a deputy or sergeant in the pod. A rover goes to each pod and picks up the forms.

I'm not sure who separates the forms but I would assume they go by what is circled. I don't know if they read the forms to determine what type of issue is addressed.

All grievances, including medical ones, go to the Captain. I haven't read the policy on grievances.

The medical requests are put into a basket and eventually come to me. The medical requests are how I know an inmate wants to see me or the doctor. If I get a medical request, I respond so the inmate knows what we are going to do about their request.

The forms on which the inmate circles request or grievance do not ordinarily come to me. If I get one marked request or grievance, it is because the form addresses a medical issue. In that case, I will treat it as a medical request.

If the form in the basket and it addresses a medical issue, I respond. I then put the form in the inmate's medical file. I don't have Hinson's medical file with me. I have no way of knowing if I get every piece of paper. I have seen some of his request forms. I think I signed most of them.

We see everyone who requests it. Some of the medical requests I can answer myself. I would say I probably answered 140 to 150 requests on Tuesday. This past week there was no medical staff at the jail on Sunday or Monday. Between thirty and fifty requests come in daily.

-13-

After I put my answer on the forms, I take them to the copy machine and make a copy. The original form goes back to the inmate and a copy goes to the medical file.

The doctor comes in three days a week--Monday, Wednesday, and Friday. He probably sees between fifty and sixty inmates each time.

The doctor makes the decision if an inmate goes to the dentist. If an inmate complains of a toothache, I send him to the doctor.

I wrote the response on Hinson's medical request dated February 12th. *Plaintiff's Exhibit* 1 at page 1. He made reference to needing dental attention. *Id.* He said he had a tooth broken off that was hurting. *Id.* I responded by writing see doctor. *Id.* Hinson was seen by the doctor on Wednesday, February 15th.

I'm in there with the doctor when he does his examination. He has a tongue depressor and a light. He does not have a dental probe or mirror.

Defendants' Exhibit 6, the last page, is an x-ray. I don't read x-rays. I don't recall seeing broken teeth.

On the February 18th grievance, Captain Petray wrote that he would forward the grievance to medical. *Plaintiff's Exhibit* 2 at page 2. If this grievance is in his medical file, I saw it. He is asking for medical care in the grievance.

The medical file is kept in my office when the inmate is incarcerated. When the inmate is released, the medical file is sent up front to be included in the inmate's administrative file.

On the grievance dated March 6th, Hinson is complaining about the medication provided for his dental problems. *Plaintiff's Exhibit* 1 at page 3. If I saw this, I would have put it in his medical file.

-14-

On the grievance dated March 14th, he is requesting proper medical attention. *Plaintiff's Exhibit* 1 at page 4. If I had gotten this, Hinson would have went back to the doctor.

On the grievance dated April 15th, he indicates he has sought medical attention for dental problems multiple time and his efforts were denied. *Plaintiff's Exhibit* 1 at 5. If I had gotten this, it would be in his medical file.

Captain Petray responds to all Hinson's grievances about medical issues by saying he would forward them to medical. This means I should get it. He returns the original grievance with his response to the inmate. If it comes to me from Captain Petray, it is already a copy.

I have a mail slot in jail administration in the secretary's office. I go by several times a day to pick up mail.

On March 17th, Hinson saw the doctor. I believe for most of March of that year I was on personal leave.

If I see an inmate, I make notes on the inmate's chart. *Plaintiff's Exhibit* 3; *Defendants' Exhibit* 4. The chart contains all notes either the doctor or I have made regarding the inmate. I usually fill out the top part containing the inmates name, age, race, sex, date of birth, and file number. *Id.*

Hinson saw the doctor on May 7th for a upper respiratory infection and dental problems. *Plaintiff's Exhibit* 3 at page 3. Hinson saw the doctor again on May 23rd for dental problems. *Id.* The doctor just writes extract and I know to call the dentist to make an appointment. I don't specify what needs to be done. I take the first available appointment.

The dentist we normally use was in an accident and not available at this time so we had to use a different dentist. I make a notation on the chart with the date of the appointment. *Plaintiff's Exhibit* 3 at page 3. You can see that the appointment in this case was originally

-15-

scheduled for July 3rd.  *Id.*  The dentist phoned and changed the appointed to June 27th.  *Id.*
They get the inmates in as soon as they can.

Defendants' Exhibit 3 is a form that we fill out if the inmate has already been sentenced.
We send one of these forms to the DOC and they write back.  The form is dated June 25th.
*Defendants' Exhibit* 3.  His appointment was June 27th and the form has to be faxed to the DOC
before he goes for his appointment.  I wrote "seen by medical needs dental extraction."  *Id.*  I
wrote what was on the file.  *Id.*  Extraction is the worse thing we would do.  They wrote back
saying what could be done.  *Id.*

I take the form to the transport sergeant who faxes the form to the DOC.  The DOC
approval date was June 26th.  *Defendants' Exhibit* 3.

I saw Hinson on May 28th for a complaint of a toothache.  *Defendants' Exhibit* 1 at page
3.  I recorded his weight and prescribed Tylenol, three times a day, for seven days.  *Id.*  This was
an over-the-counter medication.  If the inmate had a swollen jaw and I saw it, I would have
written that down.

Hinson got to see me because he filled out a medical request.  The medical request form
is dated May 23rd.  *Plaintiff's Exhibit* 1 at page 9.  I signed it on May 27th and wrote "see
nurse."  *Id.*  I saw him on the 28th.

### Captain Hunter Petray

I'm an administrative captain at the Benton County Sheriff's Office.  In 2008, I was the
jail administrator.  I have no independent recall of Hinson.

The same form is used for grievances, requests, and medical requests.  The inmate just
circles the word grievance, request, or medical.  The inmates are told to only circle one.
However, sometimes an inmate would circle both grievance and medical.

-16-

If request was circled, it goes to the jail sergeant.  If medical was circled, it goes to the medical staff.  If grievance was circled, it came to me.  I tried to answer them within three or four days.  The original grievance form is returned to the inmate and a copy placed in the file.  In a weeks' time, I probably received between fifty and sixty grievances.

If the inmate had circled grievance, but it pertained to medical issues, I forwarded it to the medical staff.  If it is something the nurse can't handle, she notifies the doctor.

On Hinson's grievance dated February 18th, I wrote that I would forward it to medical and the doctor makes all medical decisions in the jail.  *Plaintiff's Exhibit* 1 at page 2.  I wrote this because it pertained to a medical issue.  I'm not medically trained.  I would then make a copy to go in the file and also place a copy in the nurse's box.  It was my standard practice to personally place grievances dealing with medical issues in the nurse's box.  I'm human so it is possible I failed to do this on occasion when responding to grievances.

Grievances dated February 18th, March 6th, March 14th, and April 15th are not in the medical file produced in connection with the summary judgment motion.  *See* Doc. 31.  As all four addressed medical issues, I wrote that they would be forwarded to medical.  It would surprise me to find out that all four of these grievances didn't get there.  My procedure is to put all grievances dealing with medical issues into the nurse's box.  The nurse will then review them for appropriate disposition.  The nurse screens all forms dealing with medical issues.  There is a kind of hierarchy.  If it is something minor such as chapped lips, the nurse will take care of it.  If something more serious is involved, the inmate sees the doctor.

I put the grievances I forward to medical in the nurse's box.  I don't know if she puts them in the medical file,.

-17-

The decision whether to take someone to the dentist is made by the doctor.  He then has the nurse make the appointment.  It is my understanding that doctors have some dental training when they are in school.

The medical budget is set by the county.  Medical is one line item in the operating budget.  There is no separate line item for dental.  The doctor has free reign to treat inmates regardless of the medical budget.

Hinson was sentenced on March 31st.  There is a delay between sentencing and when the ADC assumes responsibility for medical treatment.  Before the ADC will pay for medical treatment, you have to have authorization.

This authorization states what they will pay for.  *Defendants' Exhibit* 3.  The ADC print out has the initial receipt date and the day when sentenced.  We have twenty-one days to send the judgment and commitment to the ADC.  After the judgment and commitment is received by the ADC, there is a thirty day delay before they will pay the inmate's medical day.  The initial receipt day may be when the judgment and commitment is received.

### *Captain Robert Holly*

I'm the current jail commander/jail administrator at the BCDC.  I have control over the medical records.  I became administrator on April 16, 2009.

Hinson has been incarcerated at the BCDC several times.  We keep a permanent file.

We get all the records.  We send them to our attorney.  Then the jail medical file has to be separated out.  The drafter of the summary judgment motion must have pulled out all records on which medical was circled.  The jail medical file contains the grievances dated February 18th, March 6th, and April 15th.  The only grievance not contained in the medical file is the one dated March 14th.

-18-

The part of the file containing medical staff notes and medical requests we get from the nurse.  If grievances were forwarded to medical, they would go into the jail file.

The forms dated February 18th, March 6th, March 14th, and April 15th, have the word grievance circled and were placed in the jail file.  My practice is to ask the nurse what is happening and forward a grievance regarding medical issues to the medical staff.  If I forward to medical, I'm actually calling the nurse.

I answer the grievance if it has to do with medical.  I tell the inmate that the doctor makes all medical decisions.  Most of the time the inmate is already seeing the doctor so I don't feel the need to tell the doctor.

## II. DISCUSSION

To prevail on an Eighth Amendment claim, Hinson must prove that defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)(*quoting Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir.1997)).

"For a claim of deliberate indifference, the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation.  Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional*

-19-

*Medical Services*, 512 F.3d 488, 499 (8th Cir. 2008)(internal quotation marks and citations omitted).

"Dental conditions, like other medical conditions, may be of varying severity." *Chance v. Armstrong*, 143 F.3d 698, 702 (2nd Cir. 1998). "Toothaches can be excruciatingly painful, and dental care is an important part of proper health." *Hartsfield v. Colburn*, 491 F.3d 394, 397 (8th Cir. 2007).

In this case, Hinson first reported suffering pain from a tooth that had broken off at the gum line and a missing filling on February 12th. On February 15th, Dr. Huskins noted Hinson had "significant dental caries and periodontal disease." *Defendants' Exhibit* 1. Hinson was prescribed saline rinses for seven days. *Id.*

Although he submitted grievances about the lack of dental care on February 18th, March 6th, and March 14th, *Plaintiff's Exhibit* 1 at pages 2-4, Hinson was not seen by medical staff again until March 17th when the doctor saw him for complaints of dental pain and a head and chest cold. *Defendants' Exhibit* 2. Dr. Huskins noted Hinson had some dental caries but "[n]o significant periodontal disease." *Id.* Hinson was prescribed an antibiotic for one week. *Id.* Dr. Huskins testified the antibiotic was prescribed for an upper respiratory infection. There is, however, no indication in Dr. Huskins' notes regarding his physical examination of Hinson to suggest he had an upper respiratory infection. *Id.*

Hinson submitted another grievance about his dental problems and not receiving proper medical attention on April 15th. *Plaintiff's Exhibit* 1 at page 5. On May 4th, he asked for a soft tray since he was not getting any type of medical attention. *Id.* at page 6.

-20-

He was seen by Dr. Huskins on May 7th for a upper respiratory infection and dental issues. *Defendants' Exhibit* 4 at page 3. Hinson was prescribed an antibiotic for one week. *Id.* On May 8th, Hinson complained of an abscessed and aching tooth. *Plaintiff's Exhibit* 1 at page 7. He also stated he had requested a soft tray because of teeth broken off at the gum line but had not received it. *Id.* On May 9th, Hinson was seen again with complaints of a sore throat, headache, and dental pain. *Defendants' Exhibit* 4 at page 3. Hinson was prescribed saline rinses for seven days and the antibiotic was changed and ordered for a week. *Id.*

Hinson continued to complain of toothaches. *Plaintiff's Exhibit* 1 at pages 8-9. He stated he had complained of toothaches on and off for months and asked for something for the pain. *Id.* Hinson was seen by the doctor on May 23rd, prescribed saline rinses for seven days, and a soft diet was ordered. *Defendants' Exhibit* 4 at page 3. The doctor also wrote "extract" on the chart. *Id.* Hinson was seen by the dentist on June 27th and two teeth were extracted. *Id.* at page 4.

Between February 15th and June 27th, the only treatment provided to Hinson were saline rinses and antibiotics. Dr. Huskins testified the antibiotics were prescribed for upper respiratory infections and not any dental condition. Nevertheless, Hinson did receive antibiotics twice during this time frame. Until May 28th, when the nurse prescribed Tylenol for seven days, Hinson received nothing for dental pain. *Defendants' Exhibit* 4.

According to Hinson's testimony and that of Worley, McCauley, Perdue and Hendrix, Hinson's mouth was swollen, he was in pain, and he had difficulty eating. The Eighth Circuit has held that a delay of more than three weeks in the provision of dental care to an inmate whose mouth showed obvious signs of infection, such as swelling, bleeding, or pus, and who

-21-

complained of severe tooth pain can constitute deliberate indifference.   *See e.g., Moore v. Jackson,* 123 F.3d 1082, 1085-87 (8th Cir.1997); *Boyd v. Knox,* 47 F.3d 966, 969 (8th Cir.1995); *Patterson v. Pearson,* 19 F.3d 439, 440 (8th Cir.1994); *Fields v. Gander,* 734 F.2d 1313, 1315 (8th Cir.1984).

In this case, Dr. Huskins testified that he never reviewed medical requests and grievances. Instead, he merely asked the inmate on the day of the examination what his complaints were. Although he didn't review Hinson's written complaints, Dr. Huskins had actual knowledge from the medical chart that Hinson complained of dental problems each time he was seen by the medical staff.  The complaints regarding Hinson's dental condition began on February 12nd and were noted in the chart on February 15th, March 17th,  May 7th, May 9th, May 23rd, May 28th, June 18th, and June 26th.  Dr. Huskins indicated his standard practice when inmates had dental problems was to prescribe saline rinses, antibiotics, or Tylenol for pain and wait to see if the treatment would resolve the problem.  If the problem persisted, and he was aware of it because the inmate returned to see him, he then made a referral to the dentist.  Dr. Huskins testified the treatment given was designed to alleviate Hinson's symptoms and would not resolve the underlying dental conditions.

No follow-up was scheduled.  Instead, the inmate had to submit another written request which was seen only by the nurse.

It was not until Hinson's visit to the doctor on May 23rd that Dr. Huskins directed the nurse to make an appointment with the dentist for Hinson.  It took more than three months for Hinson be given a referral and in excess of another month for him to be seen by the dentist. While some delay in referring Hinson to a dentist does not necessarily equate to deliberate

-22-

indifference, in this case we find the credible evidence establishes that Dr. Huskins' delay in making the referral to a dentist constitutes deliberate indifference. *Cf. Hartsfield*, 491 F.3d at 398 (doctor was not deliberately indifferent when he followed protocol of prescribing a course of ibuprofen followed by referral to a dentist if a second sick call request was submitted).

As discussed above, the procedure in place at the time, with respect to medical requests and grievances addressing medical issues, was for the documents to be given to placed in the box for the nurse.[2]  We find credible the testimony of Captain Petray in regard to the processing of grievances.

The undisputed evidence was that the nurse controlled access to the doctor and she maintained the inmate medical files during their incarceration.  The testimony established the only grievance missing from the medical file was the one date March 14th.  While Nurse Smith testified she was on leave for some period of time in March, she had actual knowledge of Hinson's complaints on February 12th, February 18th, May 4th, May 8th, May 22nd, May 23rd, and June 23rd.  *Plaintiff's Exhibit* 1.  Additionally, she testified she was present when Hinson was seen by the doctor.  She therefore had actual knowledge of Hinson's complaints of dental problems and pain on February 15th, May 7th, May 9th, May 23, and June 18th.  *Defendants' Exhibit* 4.  She saw Hinson herself because of his complaints of a toothache on May 28th and June 26th.  *Id.*  Finally, Hinson's medical chart, which she maintained, also showed that Hinson had been seen by the doctor on March 17th because of complaints of dental problems.

---

[2]The procedure utilized since Captain Holly has become administrator appears to be haphazard at best.  In response to a grievance regarding medical issues, Captain Holly testified he will sometimes call the nurse regarding the inmate, sometimes will forward the grievance to the medical staff, and other times just assume that because the inmate is being treated there is no need to inform the doctor of the complaint.  As Captain Petray was the jail administrator at the times relevant to this case, the court has no need to discuss whether this procedure could amount to deliberate indifference on the part of Captain Holly.

-23-

We believe review of the evidence establishes that Nurse Smith exhibited deliberate indifferent when she ignored Hinson's repeated requests for treatment of, and his complaints regarding the lack of treatment for, his dental condition.  Hinson had "significant dental caries," a broken tooth, and periodontal disease and complained repeatedly of pain from these conditions and the need to be treated by a dentist.  *See e.g., Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995)(delay in dental care coupled with knowledge of patient's pain can support Eighth Amendment claim).

We turn to the issue of what damages should be awarded.  Compensatory damages under § 1983 are governed by general tort-law compensation theory.  *See Carey v. Piphus*, 435 U.S. 247, 255, 98 S. Ct. 1042, 55 L. Ed. 2d 252 (1978).  In *Carey*, the Supreme Court noted that damages are available under § 1983 for actions "found . . . to have been violative of . . . constitutional rights and to have caused compensable injury."  *Id.* (internal quotation marks and citations omitted).  The law generally provides that damages may be awarded for injuries such as mental anguish and suffering, personal humiliation, and monetary losses.  *Memphis Community School Dist. v. Stachura*, 477 U.S. 299, 307, 106 S. Ct. 2537, 91 L. Ed. 2d 249 (1986)(citations omitted).  However, damages may not be awarded for the abstract or subjective value of the constitutional right at issue.  *See Stachura*, 477 U.S. at 308; *Carey*, 435 U.S. at 248.

In this case, Hinson suffered physical pain and discomfort because there was a delay in his referral to a dentist.  Although evidence was presented that Hinson had another tooth extracted at the ADC, the evidence does not establish that this was necessitated by the failure of the defendants to provide him with prompt dental care.  In short, there is no evidence that the condition of the teeth was aggravated or that they decayed further because he did not receive prompt dental attention.  *See Robinson v. Moreland*, 655 F.2d 887, 890 (8th Cir. 1981)("[L]ack of evidence the

-24-

injury was aggravated by the failure to provide prompt medical attention does not foreclose an award of damages for pain experienced during the delay."). *See also Easter v. Powell*, 467 F.3d 459, 464-65 (5th Cir. 2006)("[I]f a prisoner establishes deliberate indifference to his serious medical needs, he may recover damages for pain he suffered during the delay of treatment.").

The amount of pain and suffering caused by the delay in dental treatment is not subject to accurate measurement.  The award of damages in cases in which is has been found that defendants exhibited deliberate indifference to the serious medical needs of the plaintiff vary greatly.  *See e.g., Coleman v. Rahija*, 114 F.3d 778 (8th Cir. 1997)($1,000 compensatory damage award for two hours of pain and suffering caused by delay in taking the plaintiff who was in labor to the hospital); *Warren v. Fanning*, 950 F.2d 1370, 1374 (8th Cir. 1991)(No compensatory damages awarded despite delay of a year in referring plaintiff to an outside specialist for complaints of pain and infection of the toes of his left foot and pain in his right ankle).

The dental conditions Hinson complained about the broken tooth and the lost filling, no doubt could have been resolved by proper dental care.  Given the uncertainty as to the amount of pain suffered as a result of defendants' inaction and the lack of evidence his condition was aggravated by the failure to promptly treat these conditions, we believe an award of compensatory damages in the amount of $750 is reasonable under these circumstances.

### III.  CONCLUSION

For the reasons stated, judgment will be entered in favor of the plaintiff.

Dated this 26th day of May 2010.

/s/ *J. Marschewski*
_____
 HON. JAMES R. MARSCHEWSKI
 CHIEF UNITED STATES MAGISTRATE JUDGE

-25-